DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226-3425
Dawn R. Copley (P53343)
Jason P. Klingensmith (P61687)

- and -

FORMAN HOLT & ELIADES LLC
218 Route 17 North
Rochelle Park, NJ 07662
(201) 845-1000
Daniel M. Eliades (N.J.D.C. #DME 6203)

Attorneys for Century 21 Real Estate, LLC,
f/k/a Century 21 Real Estate Corporation

| | |
|---|---|
| In Re: : | UNITED STATES BANKRUPTCY COURT |
| : | WESTERN DISTRICT OF MICHIGAN |
| : | (Grand Rapids) |
| TIMOTHY ROBERT FORE and : | |
| PATTI JO FORE (a/ka PATTI JO : | |
| VENEKLASE-FORE), : | Chapter 7 |
| : | |
| Debtors. : | |
| : | Case No.: 06-05842 (JRH) |

| | |
|---|---|
| CENTURY 21 REAL ESTATE, LLC : | |
| : | |
| Plaintiff : | |
| v. : | Adv. Pro. No. 07- |
| : | |
| TIMOTHY R. FORE AND PATTI JO : | |
| FORE, : | |
| : | |
| Defendants : | |

## COMPLAINT PURSUANT TO 11 U.S.C. § 523 AND 11 U.S.C. § 727

Plaintiff, Century 21 Real Estate, LLC, f/k/a Century 21 Real Estate Corporation, for its

Complaint against Defendants, Timothy R. Fore and Patti J. Fore, states and alleges as follows:

## I.     PARTIES AND SUBEJCT MATTER JURISDICTION

1.     Plaintiff Century 21 Real Estate, LLC, f/k/a Century 21 Real Estate Corporation ("Century 21" or "Plaintiff"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Campus Drive, Parsippany, New Jersey 07054.

2.     Upon information and belief, Defendant, Timothy R. Fore is a citizen of the State of Michigan.

3.     Upon information and belief, Defendant, Patti J. Fore, is a citizen of the State of Michigan.

4.     Timothy R. Fore and Patti J. Fore are collectively referred to herein as the "Debtors" or "Defendants".

5.     As this is an adversary proceeding to determine the dischargeability of certain debts pursuant to 11 U.S.C. § 523 and to bar the Defendants' discharge pursuant to 11 U.S.C. § 727.

6.     The Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §157(b).

7.     Venue is proper is the district as the Defendants' bankruptcy case is pending in this district.

## II.     ALLEGATIONS COMMON TO ALL CLAIMS

8.     Century 21 has the exclusive right to use and sublicense certain trade names, trademarks and service marks, including the name "CENTURY 21" which have been registered on the Principal Register in the United States Patent and Trademark Office, with other appropriate state agencies in the United States, and with governmental agencies of foreign countries.

9.     Century 21 has developed a system for the promotion and assistance of independently owned and operated real estate brokerage offices, including policies, procedures and

techniques designed to enable such offices to compete more effectively in the real estate sales market (which system is hereinafter called the "CENTURY 21 System").

10.     From time to time, Century 21 enters into franchise agreements with persons or entities interested in using the CENTURY 21 System and certain CENTURY 21 Marks.

**A.     The Franchise Agreements Between Century 21 and Pearson.**

11.     Pre-petition, Pearson independently owned and operated eight (8) real estate brokerage offices throughout Michigan as a franchisee of Century 21 pursuant to eight (8) Century 21® Real Estate Franchise Agreements (collectively, the "Franchise Agreements") as are more particularly described below.

12.     Four (4) of the eight (8) Franchise Agreements by and between Century 21 and Pearson were executed by the parties on or about October 1, 1996, with respect to Pearson's offices located at four (4) separate locations in Grand Rapids, MI.

13.     On or about February 14, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 580 N. Beacon Blvd., Suite 21, Grand Haven, MI.

14.     On or about February 28, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 735 S. Garfield Avenue, Traverse City, MI.

15.     On or about July 1, 1999, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 325 N. St. Joseph Street, Suttons Bay, MI.

16.     On or about January 1, 2001, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 3878 M-72,

Acme, MI, which location was later changed to 215 South Cedar, Kalkaska, MI.

17.     In approximately July 2002, there was an ownership change of Pearson, resulting in the Debtors each owning fifty percent (50%) of Pearson.

18.     In approximately July 2002, the original owners of Pearson assigned the Franchise Agreements to the Debtors pursuant to eight (8) Assignment, Assumption and Release Agreements.

**B.      The Royalty Fees Due Under the Franchise Agreements.**

19.     Pursuant to the provisions of the Franchise Agreements, Pearson agreed to pay Century 21 certain franchise royalty fees equal to six percent (6%) of the gross revenue earned, derived and/or received from specified transactions by Pearson and its affiliates (the "Royalty Fees").

20.     Pursuant to the provisions of the Franchise Agreements, the Royalty Fees are fully earned by and payable to Century 21 immediately upon Pearson's receipt of revenue, whether in cash or other property, and are to be paid promptly.

21.     Each Franchise Agreements provide that Royalty Fees more than ten (10) days late bear interest from the due date until paid at the lower rate of either the highest rate allowed by law or a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A. Pittsburgh, PA.

22.     Pearson has failed to pay Royalty Fees that have come due under the terms of each of the Franchise Agreements.

23.     The Franchise Agreements provide that should either party incur attorneys' fees in order to enforce the terms and conditions thereof, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such

attorneys' fees and costs, in addition to any other remedies either party may have at law or in equity. The Franchise Agreements further provide that should any legal action be instituted in connection with the Franchise Agreements, the prevailing party shall be entitled to recover all costs and expenses, including attorneys' fees.

**C.      National Advertising Fund Contributions Due Under the Franchise Agreements.**

24.     The Franchise Agreements also provide that, in addition to the Royalty Fees, Pearson will pay timely to Century 21 a National Advertising Fund ("NAF") contribution equal to two percent (2%) of the gross revenue earned, derived and/or received from specified transactions by Pearson and its affiliates (the "NAF Contributions").

25.     Century 21 billed Pearson-Cook for the NAF Contributions on or about the tenth (10th) day of the month following the month in which Royalty Fees were payable to Century 21 under the Franchise Agreements.  If the NAF Contributions were not received by the last day of the appropriate month, Century 21 could assess a late fee equal to ten percent (10%) of the delinquent amount payable to Century 21 and/or accrue interest in favor of the NAF on the amount past due from the date due to the date paid at the lower rate of either the highest rate allowed by law of a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A., Pittsburgh, P.A.

26.     Pearson has failed by pay NAF Contributions that have come due under the terms of the Franchise Agreements.

**D.      Other Amounts Due Under the Franchise Agreements.**

27.     The Franchise Agreements provide for payment of lost future profits to Century 21 should any of the agreements terminate prematurely for certain reasons stated in the Franchise

Agreements.

28.     The Franchise Agreements provide that should either party incur attorneys' fees in order to enforce the terms and conditions thereof, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such attorneys' fees and costs, in addition to any other remedies either party may have at law or in equity. The Franchise Agreements further provide that should any legal action be instituted in connection with the Franchise Agreements, the prevailing party shall be entitled to recover all costs and expenses, including attorneys' fees.

### E.     The Guaranty.

29.      In connection with the Franchise Agreements, each of the Debtors executed a Guaranty of Payment and Performance (the "Guaranty") whereby they personally guaranteed to Century 21 any and all obligations of Pearson under the Franchise Agreements and any other agreements between Pearson and Century 21.

30.     Pursuant to the terms of the Guaranty, each of the Debtors agreed, to among other things, "the prompt payment and performance when due of all obligations of [Pearson] under" the Franchise Agreements, and any other agreement between Pearson and Century 21.  The obligations of Pearson guaranteed by the Debtors include, but are not limited to, the obligation to pay to Century 21 any and all Royalty Fees, NAF Contributions, amounts due on promissory notes, and attorneys' fees and costs incurred by Century 21 in enforcing the terms of the agreements between Pearson and Century 21.

31.      The Guaranty provides that the obligations of the Debtors are absolute and unconditional obligations, and constitute a guaranty of payment and performance.

32.     Each of the Debtors has failed to honor the terms of the Guaranty by, *inter alia*,

failing or refusing to make payments to Century 21 or otherwise "cure" as required by the terms of the Guaranty.

**F.      The Promissory Notes from Pearson and the Debtors to Century 21.**

33.      From time to time, Century 21 loaned money to Pearson and the Debtors for, *inter alia*, expenses related to the development and expansion of new branch offices.  These  loans are evidence by nine (9) promissory notes executed by Pearson and each of the Debtors, as co-makers (the "Promissory Notes"), as is more fully alleged below.

34.      On or about August 15, 1996, Pearson and the Debtors executed a Development Advance Note, as co-makers wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $100,000 (hereinafter referred to as "Promissory Note One").  Pursuant to the terms of Promissory Note One, $10,000 of the principal amount was to be forgiven on October 1, 1997, and on each October 1 thereafter until October 1, 2006 (*i.e.*, for a period of ten (10) years) provided that Pearson and each of the Debtors were not in default under the terms of any of the Franchise Agreements.

35.      On or about August 21, 1996, Pearson and each of the Debtors executed an Expansion Promissory Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $70,000 (hereinafter referred to as "Promissory Note Two").  Pursuant to the terms of Promissory Note Two, the principal and interest would be reduced annually on a dollar for dollar basis by the full amount, if any, earned by Pearson under the Century 21 Incentive Bonus Plan (as is more fully described in the Franchise Agreement) which amounts shall be applied annually as of March 15 of each year for the preceding calendar year.  Any principal and interest not paid or credited pursuant to these terms and outstanding as of October 1, 2001 was to be paid on October 1, 2001.

36.     On or about August 23, 1996, Pearson and each of the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay to Century 21 the principal amount of $60,000 (hereinafter referred to as "Promissory Note Three").  Pursuant to the terms of Promissory Note Three, $6,000 of the principal amount was to be forgiven on October 1, 1997, and on each October 1 thereafter until October 1, 2006 (*i.e.* for a period of ten (10) years) provided that Pearson and each of the Debtors were not in default under the terms of any of the Franchise Agreements.

37.     On or about October 6, 1998, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $32,500 (hereinafter referred to as Promissory Note Four").  Pursuant to the terms of Promissory Note Four, $3,250 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Four were met, including the condition that Pearson and each of the Debtors not be in default under the terms of any of the Franchise Agreements.

38.     On or about September 1, 1999, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $49,000 (hereinafter referred to as Promissory Note Five").  Pursuant to the terms of Promissory Note Five, $4,900 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Five were met, including the condition that Pearson and each of the Debtors not be in default under the terms of any of the Franchise Agreements.

39.     On or about May 16, 2000, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally

promised to pay Century 21 the principal amount of $43,350 (hereinafter referred to as Promissory Note Six"). Pursuant to the terms of Promissory Note Six, $4,805.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Six were met, including the condition that Pearson and each of the Debtors not be in default under the terms of any of the Franchise Agreements.

40. On or about December 20, 2000, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $70,000 (hereinafter referred to as Promissory Note Seven"). Pursuant to the terms of Promissory Note Seven, $7,777.77 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Seven were met, including the condition that Pearson and each of the Debtors not be in default under the terms of any of the Franchise Agreements.

41. On or about January 9, 2001, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $140,000 (hereinafter referred to as Promissory Note Eight"). Pursuant to the terms of Promissory Note Five, $15,555.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Eight were met, including the condition that Pearson and each of the Debtors not be in default under the terms of any of the Franchise Agreements.

42. On or about July 31, 2002, Pearson and the Debtors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Debtors jointly and severally promised to pay Century 21 the principal amount of $239,567.42 together with accrued interest thereon at the rate of 6.75% (hereinafter referred to as Promissory Note Nine"). Pursuant to the

terms of Promissory Note Nine, principal and interest were to be paid in 25 monthly installments as follows:  (a) 24 equal monthly installments of $4,000 payable on September 1, 2002 and on the 1st of each month thereafter, and (b) a balloon payment payable on September 1, 2004 of any and all amounts due and outstanding on Promissory Note Nine.

43.     Each of the Promissory Notes provides, *inter alia*, that if Pearson or the Debtors is in default of any material term of any of the Franchise Agreements or any other promissory note or debt instrument, then, upon such default, Century 21 may accelerate the unpaid principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand.

44.     The Promissory Notes each provide that if the Promissory Notes are collected by or through an attorney-at-law or another third party, Century 21 shall be entitled to collect reasonable attorneys' fees and all costs of collection from Pearson an/or each of the Debtors.

45.     Pearson is in default of certain material terms of the Franchise Agreements because, *inter alia*, Pearson has failed to make payments as they came due for Royalty Fees and NAF Contributions.

46.     Pearson and each of the Debtors are in default of certain material terms of the Promissory Notes because, *inter alia*, Pearson and each of the Debtors have failed to make certain installment payments as they came due.

47.     Century 21 has accelerated the amount due under each of the Promissory Notes.

**G.     The Security Agreements.**

48.     From time to time, Pearson has entered into certain security agreements with Century 21 (the "Security Agreements") to secure its obligations to Century 21 under the Franchise Agreements and the Promissory Notes.

49.     Pearson entered into five (5) separate security agreements with Century 21 as security for all agreements between Pearson and Century 21, including but not limited to, the Promissory Notes and the Franchise Agreements.

50.     The Security Agreements grant to Century 21 a security interest in certain collateral at a specified location as follows:

> all of the furniture, furnishing, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson] and including the proceeds and products therefrom and any and all substitutions, replacements, additions, and accessories thereto and to CENTURY 21 Incentive Bonuses to which [Pearson] may be entitled pursuant to any franchise agreement entered into with [Century 21], together with all such rights and properly hereafter acquired by [Pearson].

51.     The collateral identified in the Security Agreements will be collectively referred to as the "Collateral."

52      The Security Agreements provide that, *inter alia*, the following events constitute "default":

(a)     the failure by Pearson to pay any amount when due under the terms and provisions of the corresponding Promissory Note; or

(b)     Pearson's breach of any term, provision, warranty or representation set forth in the Security Agreement or in the respective Franchise Agreement, or in any other agreement between Pearson and Century 21.

53.     The Security Agreements provide that in the event of a default, Century 21 may, *inter alia*, declare all obligations secured immediately due and payable and enforce the security interest.

54.     The Security Agreements provide that in the event either party commences litigation against the other with respect to the Security Agreements, or their interpretation or enforcement, the

prevailing party shall be entitled to reasonable attorney's fees and costs.

55.    Pearson is in default of its obligations under the terms of the Promissory Notes and the Franchise Agreements.

56.    Under the terms of the Security Agreements, Century 21 is entitled to immediate possession of the Collateral.

57.    By letter dated March 11, 2003, Century 21 notified each of the Debtors and Pearson that (1) Pearson was substantially in arrears in transmitting payment to Century 21 in connection with the Royalty Fees and NAF Contributions, and that (2) Pearson and each of the Debtors were substantially in arrears in transmitting to Century 21 installments due under the various Promissory Notes.  Century 21 notified each of the Debtors and Pearson that the on-going failure to report and transmit payment constitutes a breach of the applicable Franchise Agreements.  Century 21 made demand for payment of outstanding balances.

58.    Parson and each of the Debtors failed or refused to make payment as demanded by Century 21.

59.    Pearson has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Franchise Agreements and Promissory Notes because, *inter alia*, Pearson has failed to pay amounts due to Century 21.

60.    Each of the Debtors has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Promissory Notes because, inter alia, each of the Debtors has failed to pay amounts due to Century 21.

    **H.    The District Court Litigation.**

61.    On July 3, 2003, Century 21 filed a lawsuit against the Debtors and Pearson in the United States District Court for the Western District of Michigan, Case No. 03 CV 0091, seeking

damages as a result of defendants' breach of the parties' agreements (the "District Court Litigation").

62.    On June 4, 2004, Century 21, Pearson and Debtors entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") in an effort to resolve the District Court Litigation[1]  In addition:

(1)    Pearson and Debtors executed an Expansion Promissory Note in the amount of $572,256.58, pursuant to which the defendants became obligated to pay Century 21 $572,256.58 (the "Initial Settlement Note")**;**

(2)    Century 21, Pearson and Debtors executed a Consent Judgment (the "Initial Consent Judgment") in the amount of $572,256.58 to be entered in the event defendants defaulted under the Initial Settlement Note;

(3)    Pearson and Debtors executed a Security Agreement providing Century 21 with a security interest in all of Pearson's "furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson] and including the proceeds and products therefrom."

(4)    Century 21, Pearson and the Debtors executed and had entered by the District Court a Stipulated Order of Dismissal With Prejudice which was subject to all of the terms and conditions of the Settlement Agreement and pursuant to which the District Court would retain jurisdiction over this case for the purpose of enforcing all of the terms and provisions of the Settlement Agreement.

63.    On July 21, 2004, Century 21 advised the District Court that the defendants had defaulted under the terms of the Settlement Agreement and Initial Settlement Note.  Accordingly, on July 22, 2004 the Court entered the Initial Consent Judgment in favor of Century 21 and against Pearson and Debtors, jointly and severally, in the amount of $572,256.58.

64.    In order to induce Century 21 to refrain from executing on the Initial Consent Judgment and terminating Pearson as a Century 21 franchisee, Pearson and the Debtors offered to

---

[1]  The Settlement Agreement contains a confidentiality provision precluding disclosure of the terms of the Settlement Agreement and requiring that the Settlement Agreement be filed under seal.  Accordingly, Century 21 has not attached a copy of the Settlement Agreement to this Complaint.  However, Century 21 will produce a copy of the Settlement Agreement for the Court's in *camera* review should the Court wish to review the Settlement Agreement.

engage in continued negotiations directed at paying off the Initial Consent Judgment.

65.    Ultimately, on September 20, 2004, the parties reached an agreement and memorialized such agreement in a Second Addendum to Settlement Agreement and Mutual Release (the "Second Addendum").[2]  In addition:

(1)    Century 21, Pearson and Debtors executed an Amended Expansion Promissory Note ("Amended Settlement Note") in the amount of $544,487.00, pursuant to which defendants became obligated to pay Century 21 $544,487.00; and

(2)    Century 21, Pearson and Debtors executed an Amended Consent Judgment in the amount of $544,487.00 to be entered by the Court in the event defendants defaulted under the Amended Settlement Note.

66.    Pearson and the Debtors, however, failed to make a single payment under the Amended Settlement Note and thus defaulted under the terms of the Second Addendum and Amended Settlement Note.

67.    On December 21, 2005, Century 21 advised the District Court of these defaults. Accordingly, on December 29, 2005, the Court entered the Amended Consent Judgment in favor of Century 21, and against Pearson and the Debtors, jointly and severally, in the amount of $544,487.00.

68.    On January 11, 2006, the District Court entered an Order allowing defendants' counsel to withdraw from representing defendants in the District Court Litigation.

**I.    Debtors Induce Century 21 to Refrain From Fully Executing On The Amended Consent Judgment And Terminating Pearson As A Century 21 Franchisee.**

69.    As a result of defendants' default and the entry of the Amended Consent Judgment, Century 21 initialed collection efforts against Pearson and the Debtors in June 2006, including the service of writs of garnishment and execution.  In July 2006, Century 21 successfully garnished

---

[2]  The Second Addendum is governed by the Settlement Agreement's confidentiality provision.  Century 21 will produce the Second Addendum for in *camera* review by the Court if the Court wishes to review the Second Addendum.

$4,173.80 from bank accounts owned by the Debtors.

70.     In response, Debtors again requested that Century 21 refrain from collecting the Amended Consent Judgment.  This time, the Debtors advised Century 21 that they had obtained an investor who would provide a cash infusion to Pearson and the Debtors sufficient to satisfy the Amended Consent Judgment.  On the basis of this representation, Century 21 agreed to refrain from terminating Pearson as a Century 21 franchisee, and to refrain from collecting on the Amended Consent Judgment.

71.     Ultimately, Century 21 provided Pearson and the Debtors with an extension of time, through and including October 31, 2006, to provide Century with a firm plan to satisfy the Amended Consent Judgment.  Despite repeated assurances that the firm proposal would be forthcoming, Defendants failed to provide Century 21 with any such proposal.

72.     Century 21 contends that the Debtors representations of the existence of an investor who would provide a cash infusion to Pearson and the Debtors sufficient to satisfy the Amended Consent Judgment were:  (a) knowingly false or material misrepresentations, (b) made with the intent for Century 21 to rely upon, (c) Century 21 justifiably relied upon same; (d) Century 21 was injured as a result of such reliance.

**J.     The Cessation of Operations By Pearson And The Transfer of Century 21's Collateral.**

73.     Rather than providing Century 21 with the promised plan to satisfy the Amended Consent Judgment by October 31, 2006, the Debtors were planning to close Pearson without maximizing the value of its assets or providing any benefit to Pearson's creditors.  Moreover, while the Debtors were planning to abandon Pearson, they were making plans to transfer Pearson's assets, including Century 21's Collateral without the permission of Pearson's secured

creditors and without providing any benefit to Pearson's secured creditors.  In fact, the Debtors were negotiating to "partner with" the main transferee.

74.    On December 1, 2006, the Debtors sent a memorandum to all of Pearson's Grand Rapids sales associates (the "Memorandum").  The Memorandum states that Pearson's Traverse City and Suttons Bay offices would remain open under the ownership of a third party (who was not a Century 21 Licensee).

75.    The Memorandum announced that the Grand Rapids and the Grand Haven offices of Pearson would close in two days – effective November 3, 2006.

76.    The Memorandum advised that the Debtors were "… excited about the new direction we are taking and the company we have chosen to partner with."  The "partner" referenced in the Memorandum is the Platinum Realty Group, ("Platinum").

77.    Upon information and belief, Platinum is a real estate brokerage firm which owns and licenses real estate sales offices in Michigan.

78.    The Memorandum goes on to advise that the Debtors have "… have aligned ourselves with a well respected company in Grand Rapids."  Again, this references Platinum.

79.    In the Memorandum, the Debtors go on to state that: "[w]e will be offering the most competitive associate package available while still providing the benefits of a full service real estate company."

80.    In the Memorandum, and by other means, the Debtors solicited Pearson's agents to join Platinum.

81.    In the Memorandum the Debtors advised their agents of a meeting at the Crowne Plaza Hotel on November 2, 2006 "… to learn more about this new career opportunity…"

82.    The Debtors attended the scheduled meeting at the Crowne Plaza Hotel.

83.     The purpose of the meeting was to solicit Pearson agents to join Platinum.

84.     Approximately 50 agents of Pearson attended the meeting.

85.     Timothy R. Fore and one of the principals of Platinum spoke at the meeting.

86.     On or around November 2, 2006, the Debtors caused Pearson to expire all of its current listings so that they could be transferred to new brokers.

87.     On or around November 2, 2006, all of Pearson's then current listings were transferred to new brokers.

88.     On or around November 2, 2006, many of Pearson's then current listings were transferred to Platinum or a licensee of Platinum.

89.     On or around November 2, 2006, many of Pearson's agents transferred their real estate licenses to Platinum or a licensee of Platinum.

90.     On or after November 2, 2006, certain of Pearson's furniture, fixtures, equipment and/or leases were transferred to Platinum or a licensee of Platinum or were abandoned by Pearson.

91.     Upon information and belief, Pearson received no consideration for the transfer or surrender of its listing agreements, sales agents, furniture, fixtures, equipment and/or leases.

92.     The sudden demise of Pearson and affiliation with Platinum was the subject of two news paper articles in Grand Rapids, both of with contain statements attributed to Timothy R. Fore.

**K.     The Termination of the Franchise Agreements and Appointment of a Receiver.**

93.     By letter of November 8, 2006, C21 terminated the subject Franchise Agreements with the Debtors effective November 9, 2006.

94.     On November 9, 2006, C21 filed a motion in the District Court Litigation for a temporary restraining order, preliminary injunction and appointment of a receiver for Pearson.  On

November 9, 2006, the District Court entered a temporary restraining order which, among other things, prohibited the Debtors and Pearson from transferring any assets.

95.    On November 13, 2006, the District Court entered an order granting Century 21's permanent injunction, appointing a receiver for Pearson and requiring the Debtors to provide various discovery.  The very next day, on November 14, 2006, the Debtors filed a voluntary chapter 7 bankruptcy proceeding with this Court and also filed a Chapter 7 case for Pearson.

**L.    Marshco.**

96.    Marshco Ventures, LLC ("Marsh Co.") is a Michigan Limited Liability Company doing business as Platinum Realty Group Partners.

97.    Marshco is owned by the Debtors' son, Brad Veneklase.

98.    Marshco is in the same business as Pearson was – real estate brokerage.

99.    Marshco. is a licensee of Platinum.

100.    Marshco. occupies office space at 1550 East Beltline, Grand Rapids, Michigan, which was formerly occupied by Pearson.

101.    The Debtors have transferred their real estate licenses to Marshco.

102.    All of Marshco.'s sales agents were formerly employed by Pearson.

103.    Many of Marshco's listing agreements were formerly Pearson's listing agreements.

104.    Marshco. has utilized furniture, fixtures and/or equipment formerly belonging to Pearson.

**M.    The Debtors Breach of Fiduciary Duty.**

105.    Pearson was insolvent for several years before it filed bankruptcy.

106.    The Debtors were aware of Pearson's insolvency.

107.    During the time of its insolvency, Pearson owed a fiduciary duty to its creditors.

108.    The Debtors caused Pearson to breach its fiduciary duty to its creditors.

109.    Among other things, the Debtors orchestrated the (a) expiration of all of Pearson's listing agreements; (b) the transfer of those listing agreements to other brokers, particularly Platinum and Marshco.; (c) migration of Pearson's Grand Rapids sales associates to other brokers, particularly Platinum and Marshco; (d) the transfer of certain of Pearson's furniture, fixtures and equipment for no consideration or inadequate consideration in an effort to hinder, delay and/or defraud Pearson's creditors.   The Debtors actions in this regard were willful and malicious.

110.    The Debtors also caused Pearson to abandon certain assets.

111.    The Debtors made no attempt to sell Pearson as a going concern or to maximize the value of Pearson's business or assets for Pearson's creditors.

**N.    The Destruction of Value of P&T.**

112.    The Debtors each own a fifty (50%) percent interest in P&T Investments, LLC ("P&T).

113.    P&T, in turn, owns a fifty (50%) percent interest in West Michigan Title Agency, LLC, ("West Michigan Title").

114.    Until December 31, 2006, West Michigan Title operated a title agency in Grand Rapids.

115.    The Debtors allowed West Michigan Title to "dissolve" post petition without their bankruptcy estate receiving any benefit or compensation for the interest of P&T in West Michigan Title.

116.    The Debtors are negotiating to acquire an interest in another title company.

**O.      The Sworn Pleadings Filed By The Debtors.**

117.    On November 29, 2006, the Debtors filed Schedules and a Statement of Financial Affairs in their bankruptcy case.

118.    Each of the Debtors signed the Schedules and Statement of Financial Affairs.

119.    In the Schedules and Statement of Financial Affairs, the Debtors declared, under penalty of perjury, that the information contained therein was true and correct.

120.    Certain of the information and statements provided by the Debtors in the Schedules and Statement of Financial Affairs is false.

121.    Specifically, among other things, the Debtors' Schedules and Statement of Financial Affairs contain the following false representations or accounts:

(a)     In response to questions 1 and 2 of the Debtors' Statement of Financial Affairs for the year 2006, the Debtors failed to disclose income received from (i) the rental of 1314 Powers N.W. Grand Rapids, MI, (ii) "loan repayments" from Pearson; (iii) income from the sale of various assets; (iv) income from Goldleaf Financial Corporation and/or (v) income from P&T Investments, LLC.

(b)     The Debtors represented in response to question 3 of their Statement of Financial Affairs that they made no payments requiring disclosure.  Upon information and belief, this representation is false as, among other things, the Debtors failed to disclose a transfer of approximately $21,000 to Thomas Kuiper.

(c)     The Debtors failed to account for their interest in K&F Investments, LLC (EIN # 383589300) or their disposition of their interest therein.

122.    The Pearson Schedules and Statement of Financial Affairs was signed by Timothy R. Fore as President of Pearson.

123.    The Pearson Schedules and Statement of Financial Affairs were signed by Mr. Fore under penalty of perjury and with a representation that the information contained therein was true and correct.

124.    Certain of the information contained in the Pearson Schedules and Statement of

Financial Affairs is false.

125. Specifically, among other things:

(a) The commissions due to Pearson as a result of the listings which were subject to contracts of sale as of the petition date are not disclosed in Schedule B.

(b) The commissions due to Pearson as a result of sales, (where Pearson was not the listing company), which were subject to contracts of sale as of the petition date are not disclosed in Schedule B.

(c) The listing agreements at Pearson, (which were not subject to contracts of sale) as of the petition date are not disclosed in Schedule B.

(d) Pearson failed to disclose co-debtors of numerous obligations on Schedule H.

(e) Pearson failed to state its gross income in response to question 1 of the Statement of Financial Affairs.

(f) In response to question 3 of the Statement of Financial Affairs, Pearson represented that it made no such payments to: (a) creditors in the 90 days pre-petition or (b) insider creditors in the one year pre-petition. Both representations are false.

(g) In response to question 10 of the Statement of Financial Affairs, Pearson represented that it made no such transfers. This representation may prove false.

(h) In response to question 23 of the Statement of Financial Affairs, Pearson failed to disclose the date or amount of the "loan repayments" made by Pearson to Mr. Fore.

**P.    The Amounts Due To Century 21.**

126. As to the petition date, the Debtors were indebted to Century 21 in the amount of $628,233.57 (comprised of the judgment amount of $544,487) plus interest in the amount of $583,746.57 through the petition date as authorized in the Amended Consent Judgment.

127. In addition, as of the petition date, the Debtors were indebted to Century 21 in the amount of $718,929.88 on account of outstanding royalty fees due under the Franchise Agreements (which amounts were not included in the Amended Consent Judgment).

128.    In addition, as a result of the pre-petition termination of the Franchise Agreements, the Debtors became obligated to pay Century 21 for future fees in the amount of $5,230,489.05 under the Franchise Agreements.

129.    In addition, as of the petition date, Century 21 had incurred legal fees and expenses to Dickson Wright, PLLC in the amount of $28,046.96.  Century 21 incurred additional legal fees and costs to other law firms in connection with its pre-petition claims against the Debtors.  Pursuant to the Franchise Agreements, the Debtors are responsible for Century 21's legal fees and costs.

## COUNT ONE
### [Objection to Dischargeability – 11 U.S.C. § 523 (a)(2)(A)]

1.    Century 21 repeats the allegations above as if set forth at length herein.

2.    The Debtors representations of the existence of an investor who would provide a cash infusion to Pearson and the Debtors sufficient to satisfy the Amended Consent Judgment were: (a) knowingly false or knowingly material misrepresentations; (b) made with the intent for Century 21 to rely upon; (c) Century 21 justifiably relied upon same; and (d) Century 21 was injured as a result of such reliance.

3.    As a result of the foregoing, the Debtors' obligations to C21 are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, plaintiff demands judgment on this first count declaring all debts owned by the Debtors to Century 21 are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), fixing the amount of such debt, awarding plaintiff costs and such further relief as the court deems just and proper under the circumstances.

## COUNT TWO
### [Objection to Dischargeabilty – 11 U.S.C. § 523(a)(4)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      The Debtors have committed fraud or defalcation while acting in a fiduciary capacity.

3.      The Debtors' obligations to Century 21 should be excepted from any discharge afforded to the Debtors pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, plaintiff demands judgment on this second count declaring all debts owned by the Debtors to Century 21 are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), fixing the amount of such debt, awarding plaintiff costs and such further relief as the court deems just and proper under the circumstances.

## COUNT THREE
### [Objection to Dischargeabilty – 11 U.S.C. § 523(a)(6)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      The Debtors' actions have caused willful and malicious injury to Century 21 and/or the Collateral of Century 21.

3.      The Debtors' obligations to Century 21 should be excepted from any discharge afforded to the Debtors pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, plaintiff demands judgment on this third count declaring all debts owned by the Debtors to Century 21 are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), fixing the amount of such debt, awarding plaintiff costs and such further relief as the court deems just and proper under the circumstances.

## COUNT FOUR
### [Objection to Discharge – 11 U.S.C. § 727 (a)(2)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      The Debtors, with the intent to hinder, delay or defraud their creditors, have transferred, removed, destroyed, concealed or have permitted to be transferred, removed, destroyed or concealed property of the Debtors, (including property of Pearson), within one year before the date of the filing of their petition.

3.      The Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

WHEREFORE, Century 21 demands judgment on this fourth count denying the Debtors' discharge under 11 U.S.C. § 727(a)(2), awarding plaintiff costs of suit and such other and further relief as the Court deems just and proper under the circumstances.


## COUNT FIVE
### [Objection to Discharge – 11 U.S.C. § 727 (a)(2)(B)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      The Debtors with the intent to hinder, delay or defraud creditors have transferred, removed or destroyed, or have permitted to be transferred, removed or destroyed property of the estate, (the interest of P&T in West Michigan Title), after the date of the filing of their petition.

3.      The Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(B).

WHEREFORE, Century 21 demands judgment on this fifth count denying the Debtors' discharge under 11 U.S.C. § 727(a)(2)(B), awarding plaintiff costs of suit and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT SIX
### [Objection to Discharge – 11 U.S.C. § 727 (a)(4)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      Debtors have knowingly or intentionally made false statements or accounts in their bankruptcy case.

3.      The Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, Century 21 demands judgment on this sixth count denying the Debtors' discharge under 11 U.S.C. § 727(a)(4), awarding plaintiff costs of suit and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT SEVEN
### [Objection to Discharge – 11 U.S.C. § 727 (a)(7)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      The Debtors have committed an act specified under 11 U.S.C. § 727(a)(2) and (4)(A) within one year before the date of the filing of their bankruptcy petition.

3.      The Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(7).

WHEREFORE, Century 21 demands judgment on this seventh count denying the Debtors' discharge under 11 U.S.C. § 727(a)(4), awarding plaintiff costs of suit and such other and further relief as the Court deems just and proper under the circumstances.

## COUNT EIGHT
### [Objection to Discharge – 11 U.S.C. § 727 (a)(7)]

1.      Century 21 repeats the allegations above as if set forth at length herein.

2.      Timothy R. Fore has committed an act specified in 11 U.S.C. § 727(a)(2) and (4) within one year before the date of the filing of the Pearson petition, or during the Pearson case.

3.      Timothy R. Fore should be denied a discharge pursuant to 11 U.S.C. § 727(a)(7).

WHEREFORE, Century 21 demands judgment on this seventh count denying Timothy R. Fore's discharge under 11 U.S.C. § 727(a)(4), awarding plaintiff costs of suit and such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, Michigan 48226-3425


By:    /s/  Dawn R. Copley
            Dawn R. Copley (P53343)
            Jason P. Klingensmith (P61687)

and

FORMAN HOLT & ELIADES LLC
218 Route 17 North
Rochelle Park, New Jersey 07662
201-845-1000
Attorneys for Century 21 Real Estate, LLC,
Daniel M. Eliades

Dated: February 16, 2007


c:\documents and settings\omeycd\application data\hummingbird\dm\temp\detroit-#978024-v1-complaint_-_bky.doc